Paul R. Taylor, WSBA #14851
Jofrey M. McWilliam, WSBA #28441
Byrnes Keller Cromwell LLP
1000 Second Avenue, 38th Floor
Seattle, WA 98104
(206) 622-2000
Facsimile No.: (206) 622-2522

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| AJ AND JODI OCHOA, individually and the marital community composed thereof; TERRA GOLD FARMS, INC., a Washington corporation; A&C LAND COMPANY, LLC, a Washington limited liability company; and AJ OCHOA CORPORATION, a Washington corporation,<br><br>Plaintiffs,<br><br>v.<br><br>INDUSTRIAL VENTILATION, INC., an Idaho corporation; and TETON WEST OF WASHINGTON, LLC, an Idaho limited liability company,<br><br>Defendants. | NO. 2:18-CV-393<br><br>**COMPLAINT**<br><br><u>JURY DEMAND</u> |

**I.    PARTIES, JURISDICTION, AND VENUE**

1. Plaintiffs AJ and Jodi Ochoa are husband and wife. They reside in Othello, Washington.

2. Plaintiff Terra Gold Farms, Inc., is a Washington corporation located in Othello, Washington, and is owned and operated by AJ and Jodi Ochoa.

COMPLAINT AND JURY DEMAND (NO. 2:18-CV-393) - 1

BYRNES • KELLER • CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

3. Plaintiff A&C Land Company, LLC, is a Washington limited liability company located in Othello, Washington. AJ and Jodi Ochoa are its only members.

4. AJ Ochoa Corporation is a Washington corporation located in Othello, Washington, and is owned and operated by AJ and Jodi Ochoa.

5. Defendant Industrial Ventilation Inc. is an Idaho corporation with its principal place of business in Nampa, Idaho.

6. Defendant Teton West of Washington, LLC, is an Idaho limited liability company with its principal place of business in Nampa, Idaho. Teton West is owned and controlled by Industrial Ventilation. Industrial Ventilation is Teton West's only member and its manager. Defendants Industrial Ventilation and Teton West are herein collectively referred to as "IVI."

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the plaintiffs and the defendants, and because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. The plaintiffs are all Washington citizens who reside in, or have their principal places of business in, Othello, Washington. The defendants are all Idaho citizens with their principal places of business in Nampa, Idaho. The damages claimed by plaintiffs far exceed the jurisdictional amount in controversy threshold.

8. Personal jurisdiction exists over the defendants because both of the defendants do business in Washington, the services provided by defendants, and the acts and omissions of defendants, occurred in Othello, Washington.

COMPLAINT AND JURY DEMAND (NO. 2:18-CV-393) - 2

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and (c) because the storage facilities designed and installed by defendants, the services provided by defendants, and the acts and omissions of defendants, occurred in Othello, Adams County, Washington, and defendants do business here. This Court is the district and division embracing Adams County, Washington.

## II.   GENERAL ALLEGATIONS

10. AJ and Jodi Ochoa have been successfully farming in the Othello region of Washington for many years. Farming has been in their families for generations.

11. AJ and Jodi Ochoa run their farming operations through Terra Gold Farms, A&C Land Co., and AJ Ochoa Corp., all of which are owned and operated by AJ and Jodi Ochoa and undertake various functions of their farming operation. Plaintiffs are collectively referred to as "the Ochoas."

12. The Ochoas grow, harvest, and bring to market a number of crops, including potatoes, onions, various varieties of wheat and other grains, sweet corn, corn silage, alfalfa and timothy hay, grass seed, and dried, edible seed beans.

13. Certain crops, including potatoes and onions, are stored for extended periods of time after harvest and before they are brought to market. Thus, vegetable storage is a critical aspect of the Ochoas' farming operations.

14. IVI holds itself out as "the industry leader in state-of-the-art ventilation technology for vegetable storage."

15. IVI claims that it "specializes in post-harvest, root crop storage ventilation systems—from development to installation and service."

COMPLAINT AND JURY DEMAND (NO. 2:18-CV-393) - 3

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

16. IVI asserts that it "pioneered the development of climate-controlled vegetable storage facilities over 40 years ago," that it "remains the industry leader," and that crops stored in IVI storage systems "are protected by the most advanced, most trusted systems in the world."

17. A vegetable storage facility consists of a structure and component parts and equipment that function together as a single system that, among other things, regulates, alters, adjusts, monitors and controls the storage conditions of the facility/system. The facility/system as a whole is a "product."

18. IVI designs, manufactures, constructs, assembles, installs, monitors, services and repairs these systems, including the structure and the component parts and equipment, all of which function together as a single storage system.

19. IVI also designs, manufactures, and installs control modules that operate, control, and monitor the storage facility and conditions within it.

20. Frank Bushman is the President and CEO of Industrial Ventilation. Because Industrial Ventilation is the managing member of Teton West, Mr. Bushman is also the manager of Teton West. On a single business card, Mr. Bushman lists Industrial Ventilation on one side and Teton West on the other, and identifies himself as the President of both companies. On information and belief, Mr. Bushman knew of and directed the activities of Industrial Ventilation and Teton West, may have participated in the design of the storage facilities, made statements that were false, misleading, unfair or deceptive, and had information, or knew about information held by IVI, that should have been but was not provided to Plaintiffs.

COMPLAINT AND JURY DEMAND (NO. 2:18-CV-393) - 4

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

21. Industrial Ventilation and Teton West are vicariously liable for the acts, omissions, conduct and statements of Mr. Bushman and their other employees and agents.

22. In 2012, IVI designed, manufactured, constructed, assembled, and installed, in Othello, Washington, a 36,000-ton vegetable storage facility for the Ochoas, including the structure, all of the component parts, the system as a whole, the control panel, and drainage systems.

23. In 2015, IVI designed, manufactured, constructed, selected, assembled, and installed, in Othello, Washington, a second 36,000-ton vegetable storage facility for the Ochoas, including the structure, all of the component parts, the system as a whole, the control panel, and drainage systems.

24. Each of the storage facilities included warranties, extending up to three years.

25. Both the 2012 and the 2015 storage facilities have experienced significant equipment breakdowns and malfunctions, and the systems as a whole suffered complete breakdown and failure.

26. Because the storage facilities were under warranty for a number of years, and because IVI had remote access to the control panels, IVI routinely visited the site, inspected the storage facilities, fixed (or attempted to fix or claimed to have fixed) equipment that had failed, monitored the control panels and storage data, changed settings and controls, and otherwise was fully aware of the condition and operation of the storage facilities—and altered or adjusted operating conditions as it saw fit. On

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

virtually every visit to fix a piece of failed equipment or to inspect the facilities, IVI insisted that the facilities were operating correctly and that there were no problems.

27. Due to extremely heavy losses of 2015 and 2016 potato and onion crops that were in storage, the Ochoas requested that IVI provide information regarding the storage facilities that IVI had access to through its remote monitoring of the facilities, and to assist in diagnosing the problem.

28. In general, IVI refused to cooperate, did not provide all of the information it had access to, and did not provided assistance in diagnosing the problem. To the contrary, IVI continued to maintain that the storage systems were fine, that there was nothing wrong with them, that breakdowns and other problems with or resulting from the storage systems were part of a "breaking-in" process, and that the Ochoas' farming practices, rather than problems with or resulting from the storage systems, must be the problem.

29. Because IVI has been adamant that there was nothing wrong with the systems, and that the storage facilities were operating properly, the Ochoas initially undertook a review of their farming practices. This review showed no issues with farming practices. Indeed, the Ochoas have farmed for decades, are experienced farmers, and have stored their products in storage facilities for decades without ever before experiencing this magnitude of crop loss. The crop losses experienced by the Ochoas are particular to the storage facilities designed, manufactured, installed, monitored and serviced by IVI.

COMPLAINT AND JURY DEMAND (NO. 2:18-CV-393) - 6

BYRNES • KELLER • CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

30. When the Ochoas requested that IVI assist in determining what the problems were and why there were such significant crop losses following the 2015 and 2016 growing seasons (the 2016 and 2017 storage crops), IVI refused to meaningfully participate.

31. When the Ochoas requested historical information from the control panels to which only IVI had access, IVI largely refused to cooperate and failed to provide complete information.

32. Due to IVI's continuing insistence that the facilities were operating correctly and IVI's refusal to participate in problem-solving, the Ochoas were forced to diagnose and attempt to fix and mitigate the problems on their own—without the information, knowledge, expertise, and assistance that IVI should have been providing.

33. The storage facilities designed, constructed, installed, monitored and serviced by IVI have significant defects in design, manufacture, construction, installation, assembly, equipment selection, equipment location, and/or system controls. These problems have resulted in chronic equipment failure and the failure and breakdown of the systems as a whole, resulting in millions of dollars in lost crops, among other damages.

34. At all relevant times, IVI had access to information regarding the operation and functioning of the storage systems, monitored and controlled the storage systems, serviced the storage systems, and provided related services to the Ochoas. IVI's technicians and service personnel visited the storage facilities on numerous

COMPLAINT AND JURY DEMAND (NO. 2:18-CV-393) - 7

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

occasions.  Despite its superior knowledge and expertise, IVI failed and refused to fully, completely or meaningfully disclose the knowledge that it had or to assist in diagnosing and fixing the problems in the storage facilities it had designed, constructed, installed, monitored, controlled and serviced.  Instead, IVI deliberately and knowingly stonewalled all of the Ochoas' attempts to obtain knowledge and information relating to the design, operation and functioning of the storage systems—information that would have assisted in diagnosing and ameliorating the issues.

### III.  FIRST CAUSE OF ACTION
### NEGLIGENCE

35. IVI breached duties owed to the Ochoas because, among other things, the storage facilities were negligently designed, manufactured, constructed, assembled, installed, monitored and/or serviced.  Among other things, the two storage facilities do not each contain four independent zones; the air plenums were negligently designed and installed; the exhaust louvers were negligently designed, located and installed; the drainage system was negligently designed; and components and equipment were negligently designed, selected, located and installed—including, among other things, louvers, tubing, sensors, control panels, condensers, coils, pumps, and defrost components.

36. The control panels were negligently designed and installed and failed to properly monitor and control conditions in the storage facilities.

37. Sensors were not properly calibrated, tested or inspected.

COMPLAINT AND JURY DEMAND (NO. 2:18-CV-393) - 8

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

38. The storage systems were not properly completed, tested, and inspected prior to use, and subsequent repairs and inspections were negligently done.

39. Instructions, information, warnings and critical information regarding storage conditions, among other things, were not provided, deliberately withheld, and/or concealed.

40. The defects in the storage system have resulted in critical and chronic equipment breakdowns, and the failure/breakdown of the system as a whole.

41. The defects in the storage facilities, and resulting equipment breakdowns and the breakdown/failure of the system as a whole, have resulted in substantial injury and damages to the Ochoas, including but not limited to lost crops, diminution in the value of the storage facilities, the costs of repairs and other efforts to mitigate the problems with the storage facilities, and other injuries and damages all in an amount to be proven at trial.

### IV.    SECOND CAUSE OF ACTION
### PRODUCT LIABILITY

42. Each of the storage facilities, and each of the component parts of the storage facilities, constitute a product that is defective and that resulted in the Ochoas' losses under RCW 7.72, *et seq.*, or, in the alternative, under Idaho Code section 6-1401, *et seq.*

43. IVI was negligent in the design, manufacture, construction, assembly, selection, and installation of the storage facilities, and each of their component parts.

COMPLAINT AND JURY DEMAND (NO. 2:18-CV-393) - 9

BYRNES • KELLER • CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

44.     The two storage facilities were negligently designed, manufactured, constructed, assembled, and installed.  Among other things, the two storage facilities do not each contain four independent zones; the air plenums were negligently designed and installed; the exhaust louvers were negligently designed, located and installed; the drainage system was negligently designed; and components and equipment were negligently designed, selected, located and installed—including, among other things, louvers, tubing, sensors, control panels, condensers, coils, pumps, and defrost components.

45.     The control panels were negligently designed and installed and failed to properly monitor and control conditions in the storage facilities.

46.     Sensors were not properly calibrated, tested or inspected.

47.     Instructions, information, warnings and critical information regarding storage conditions, among other things, were not provided, deliberately withheld, and/or concealed.

48.     The storage systems were not properly completed, tested, and inspected prior to use, and subsequent repairs and inspections were negligently done.

49.     The defects in the storage system have resulted in critical and chronic equipment breakdowns.

50.     In addition, IVI had superior knowledge of the storage facilities it designed and constructed, and how they were supposed to function, and had access to the facilities as well as to the control panels and all monitoring information. Nevertheless, IVI failed to warn of potential issues and problems with the facilities,

COMPLAINT AND JURY DEMAND (NO. 2:18-CV-393) - 10

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

failed to warn of any supposed "break in" period, and otherwise failed to provide information and warnings that it was duty-bound to provide to the Ochoas. Had such warnings or instructions been provided, some or all of the losses would have been averted.

51. The defects in the storage facilities, and resulting equipment breakdowns, have resulted in substantial injury and damages to the Ochoas, including but not limited to lost crops, diminution in the value of the storage facilities, the costs of repairs and other efforts to mitigate the problems with the storage facilities, and other injuries and damages all in an amount to be proven at trial.

## V. THIRD CAUSE OF ACTION
## CONSUMER PROTECTION ACT VIOLATION

52. Pursuant to RCW 19.86 *et seq.*, or in the alternative, Idaho Code section 48-601 *et seq.*, defendants are liable to the Ochoas for their unfair and/or deceptive acts and practices.

53. In particular, IVI held itself out as exceptionally qualified in the design, manufacture, construction, installation, monitoring, servicing, and repair of vegetable storage systems. IVI specifically claimed that its storage systems were state-of-the-art, that it was an industry leader in providing such systems, that there was no better facility for vegetable crop storage, and that IVI's monitoring and other services were the best in the potato and onion storage industry.

54. After chronic equipment failures and failure of the systems as a whole, IVI continued to specifically state that the systems were working properly, that there

COMPLAINT AND JURY DEMAND (NO. 2:18-CV-393) - 11

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

were no problems, and that any problem must be from farming practices and not the design or functioning of the storage facilities.

55. IVI stated that it would provide four independent storage zones in each of the storage facilities, and affirmatively stated that the facilities, and/or each of the zones, could be used for both potato and onion storage.

56. After the fact, IVI stated that the storage systems were subject to a "break in" period, and that equipment breakdowns, other issues resulting from the storage systems, and crop losses were normal and due to the "break in" period of the systems.

57. Despite prior representations regarding four independent zones in each storage facility that could be used interchangeably for potatoes and onions, IVI later claimed that onions should not be stored in the facilities for one year, until after the purported "break in" period.

58. Due to its remote access capability and monitoring, inspections, service, and repairs, IVI had and has critical information relating to the systems that it has refused to provide to the Ochoas. This was done to cover up IVI's misconduct and the problems with the storage systems, and to prevent the Ochoas from discovering the truth about the problems.

59. IVI knew or should have known that the Ochoas would, and did, rely on the false and misleading statements and material omissions that were being made by IVI.

60. IVI's statements, and its conduct in refusing to provide information, are unfair and deceptive acts and practices.

COMPLAINT AND JURY DEMAND (NO. 2:18-CV-393) - 12

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

61. Had IVI properly informed the Ochoas, and not made false or misleading statements, the Ochoas would not have constructed the storage facilities, or at a minimum, would not have constructed the 2015 storage facility, or taken other actions to store crops from the 2015 and 2016 harvests and avert losses.

62. The false and misleading statements made by IVI are not only capable of repetition, on information and belief, they have and are being repeated since IVI holds itself out as an industry leader in vegetable crop storage and contends that its systems have no problems and utilizes the same types of remote monitoring and control systems as were utilized here.

63. IVI's false and misleading statements, its refusal to provide information, and its other conduct constitutes unfair and deceptive acts and practices and have resulted in significant injury and damages to the Ochoas, including but not limited to lost crops, diminution in the value of the storage facilities, the costs of repairs and other efforts to mitigate the problems with the storage facilities, and other injuries and damages all in an amount to be proven at trial.

## VI. FOURTH CAUSE OF ACTION
## NEGLIGENT AND/OR INTENTIONAL MISREPRESENTATION

64. IVI's false, misleading, and deceptive statements, and the refusal to provide full information, all as alleged above, were intentionally and/or negligently engaged in.

65. IVI knew or should have known that the Ochoas would, and did, rely on them, and would act on the statements and information IVI provided.

COMPLAINT AND JURY DEMAND (NO. 2:18-CV-393) - 13

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

66. Had IVI properly informed the Ochoas, and not made false or misleading statements or refused to provide information, the Ochoas would not have constructed the storage facilities, or at a minimum, would not have constructed the 2015 storage facility, or might have taken other actions to store crops from the 2015 and 2016 harvests and avert losses.

67. IVI's false, misleading, and/or deceptive statements and conduct, and its refusal to provide information, has resulted in significant injury and damages to the Ochoas, including but not limited to lost crops, diminution in the value of the storage facilities, the costs of repairs and other efforts to mitigate the problems with the storage facilities, and other injuries and damages all in an amount to be proven at trial.

### VII.   FIFTH CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY/ESTOPPEL

68. Because it held itself out as an expert in the industry on whose knowledge and expertise the Ochoas could rely, and whom the Ochoas could trust, because of its superior knowledge of the design and functioning of the storage facilities, and because of its superior information about storage conditions and access to the facilities and to the monitoring and control data and systems, and because IVI knew or should have known that the Ochoas would and did rely on and trust IVI and IVI's purported expertise, information and knowledge, IVI occupied a fiduciary position with respect to the Ochoas regarding the storage facilities.

69. IVI breached its fiduciary duties by providing false and misleading information to the Ochoas regarding the storage facilities, including specifically that

COMPLAINT AND JURY DEMAND (NO. 2:18-CV-393) - 14

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

the facilities were operating as designed and as they were supposed to be despite multiple problems and failures, and because IVI failed and refused to provide all of the material information it had regarding conditions in the facilities and information that might have helped diagnose the problems and avoid the substantial losses suffered by the Ochoas.

70. At a minimum, IVI knew or should have known that the Ochoas would and did rely on the statements and information provided by IVI, and that the information provided by IVI was false, misleading, and/or materially incomplete.

71. IVI knew that the Ochoas did not have and could not obtain the same knowledge, expertise and information regarding the storages and the operations of the storage systems, and that the Ochoas relied on the information, statements and omissions provided by IVI, all to the Ochoas detriment, and suffered significant losses as a result. IVI is liable for those losses in an amount to be proven at trial.

## VIII. SIXTH CAUSE OF ACTION
## BREACH OF CONTRACT

72. The Ochoas timely performed all of their obligations under the contracts with Industrial Ventilation and Teton West and are not in breach of the contracts.

73. Industrial Ventilation and Teton West each breached their obligations under their respective contracts with the Ochoas by failing to deliver completed, properly-functioning storage systems, and by failing to provide four independent storage zones in each facility.

COMPLAINT AND JURY DEMAND (NO. 2:18-CV-393) - 15

BYRNES • KELLER • CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

74.     The warranties provided by Industrial Ventilation fail (and failed) of their essential purpose because component part replacement did not and could not fix the problems, and because Industrial Ventilation otherwise failed and/or refused to meaningful assist in diagnosing and solving the problems.  Industrial Ventilation's and Teton West's breaches of their obligations under their respective contracts with the Ochoas have resulted in substantial injury and damages to the Ochoas, all in an amount to be proven at trial.

## IX.    SEVENTH CAUSE OF ACTION
## FRAUDULENT CONCEALMENT

75.     Because of its expertise, knowledge of the design and functioning of the storage facilities, access to the facilities, access to and knowledge of storage conditions, and knowledge of and access to control data and systems, IVI had far superior knowledge and information relating to the operation, function, conditions, and problems of the storage facilities.

76.     IVI knowingly and deliberately failed and refused to provide the knowledge and information it had to the Ochoas, despite repeated requests by the Ochoas.  Instead, IVI provided false and misleading information to the Ochoas, knowingly did not provide material information that should have been provided, and/or concealed information.  All of this was done to cover up IVI's misconduct and the problems with the storage systems, and to prevent the Ochoas from discovering the truth about the problems.

COMPLAINT AND JURY DEMAND (NO. 2:18-CV-393) - 16

BYRNES • KELLER • CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

77. IVI knew that the Ochoas did not have and could not obtain the same knowledge, expertise and information regarding the storages and the operations of the storage systems, and that the Ochoas relied on the information, statements and material omissions provided by IVI, all to the Ochoas detriment, and that the Ochoas suffered significant losses as a result.

78. Had IVI properly informed the Ochoas, and not made false or misleading statements or refused to provide material information, the Ochoas would not have constructed the storage facilities, or at a minimum, would not have constructed the 2015 storage facility, or might have taken other actions to store crops from the 2015 and 2016 harvests and avert losses.

79. IVI's false, misleading, and/or deceptive statements and conduct, and its refusal to provide material information, constitutes fraudulent concealment and has resulted in significant injury and damages to the Ochoas, including but not limited to lost crops, diminution in the value of the storage facilities, the costs of repairs and other efforts to mitigate the problems with the storage facilities, and other injuries and damages all in an amount to be proven at trial. IVI is liable for those losses and/or is estopped, based on its conduct and statements, from asserting defenses to the Ochoas' claims.

## X.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Court enter the following relief:

1. For Judgment in favor of Plaintiffs and against Defendants on all counts in the Complaint;

COMPLAINT AND JURY DEMAND (NO. 2:18-CV-393) - 17

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

2. For an award of damages and entry of judgment jointly and severally against Defendants in an amount to be proven at trial;

3. For pre-judgment interest as allowed by applicable law;

4. For post-judgment interest as allowed by applicable law, from the date of entry of judgment in this matter until full satisfaction of judgment;

5. For an award of Plaintiffs' attorneys' fees and costs incurred in connection with plaintiffs' claims and this lawsuit; and

6. For such other and further relief as the Court deems just and equitable under the circumstances.

## XI. DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED this 21st day of December, 2018.

> BYRNES KELLER CROMWELL LLP
>
> By /s/ Paul R. Taylor
>    Paul R. Taylor, WSBA #14851
>    ptaylor@byrneskeller.com
> By /s/ Jofrey M. McWilliam
>    Jofrey M. McWilliam, WSBA #28441
>    jmcwilliam@byrneskeller.com
> 1000 Second Avenue, 38th Floor
> Seattle, Washington  98104
> 206-622-2000
> Fax:  206-622-2522
> Attorneys for Plaintiffs

COMPLAINT AND JURY DEMAND (NO. 2:18-CV-393) - 18

BYRNES • KELLER • CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000