1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF WASHINGTON

7    AJ and JODI OCHOA, individually
     and the marital community composed        NO. 2:18-CV-0393-TOR
8    thereof, TERRA GOLD FARMS,
     INC., a Washington corporation;           ORDER GRANTING IN PART AND
9    A&C LAND COMPANY, LLC, a                   DENYING IN PART DEFENDANT'S
     Washington limited liability               MOTION FOR SUMMARY
10   company, and AJ OCHOA                      JUDGMENT
     CORPORATION, a Washington
11   corporation,

12                          Plaintiffs,

13       v.

14   INDUSTRIAL VENTILATION,
     INC., an Idaho corporation,
15
                            Defendant.
16

17       BEFORE THE COURT is Defendant's Motion for Summary Judgment.

18   (ECF No. 98).  This matter was submitted for consideration without oral argument.

19   The Court has reviewed the record and files herein, and is fully informed.  For the

20   reasons discussed below, Defendant's Motion for Summary Judgment (ECF No.

     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
     MOTION FOR SUMMARY JUDGMENT ~ 1

98) is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

This case concerns Plaintiffs' purchase and use of Defendant's allegedly defective vegetable storage facilities to store onion and potato crops, resulting in several million dollars' worth of crop loss.  ECF No. 1.  On December 21, 2018, Plaintiffs filed a Complaint against Defendant,[1] alleging the following causes of action: (1) negligence, (2) product liability, (3) violation of Washington or Idaho's Consumer Protection Act, (4) negligent and/or intentional misrepresentation, (5) breach of fiduciary duty, (6) breach of contract, and (7) fraudulent concealment.  ECF No. 1 at 8-17, ¶¶ 35-79.

On April 21, 2020, Defendant filed a Motion for Partial Summary Judgment.  ECF No. 34.  After the parties' full briefing, the Court granted the parties' stipulated motion to vacate the hearing on the Motion for Partial Summary Judgment and ordered that "[t]he Motion for Partial Summary Judgment may be renewed by filing supplemental briefing and incorporating by reference the prior briefing."  ECF No. 47.

---

[1]    Defendant Teton West of Washington, LLC was dismissed on November 20, 2019.  ECF No. 19.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 2

On September 7, 2021, Defendant filed the present Motion for Summary Judgment on the grounds that (1) Plaintiffs cannot prove the damage element of any claim, (2) the independent duty doctrine bars Plaintiffs' claims for negligence, product liability, misrepresentation, and breach of fiduciary duty, and (3) Plaintiffs AJ Ochoa, Jody Ochoa, and A&C Land Company lack standing.  ECF No. 98 at 2.  The parties timely filed their respective response and reply, and Plaintiffs incorporated the briefing in opposition to the previous Motion for Partial Summary Judgment.  *See* ECF Nos. 104, 109.

Except where noted, the following facts are not in dispute.

## FACTS

Plaintiffs AJ and Jodi Ochoa are husband and wife who reside in Othello, Washington.  ECF No. 98-2 at 2, ¶ 1.  AJ and Jodi Ochoa are the sole owners of three Washington corporations: Plaintiffs Terra Gold Farms, A&C Land Company, and AJ Ochoa Corporation.  ECF No. 98-2 at 2, ¶ 2.  Each of these corporations serve different functions in the Ochoas' commercial crop farming operation:  Terra Gold Farms grows vegetables such as potatoes and onions, AJ Ochoa Corporation builds and owns vegetable storage facilities, and A&C Land Company leases the land to Terra Gold Farms and AJ Ochoa Corporation.  ECF No. 98-2 at 2, ¶¶ 3-4.

Defendant IVI is an Idaho corporation with its principal place of business in Nampa, Idaho.  ECF No. 98-2 at 2, ¶ 6.  IVI designs, manufactures, constructs,

1  assembles, installs, monitors, services, and repairs vegetable storage facilities and

2  their control modules.  ECF No. 98-2 at 2, ¶ 7.

3      In early 2012, AJ Ochoa solicited bids from businesses for the construction

4  of large vegetable storage facilities, including from Defendant IVI.  ECF No. 98-2

5  at 2, ¶¶ 6-7.  In discussing the bid, the Ochoas' requested, and Defendant agreed to

6  provide a three-year warranty with no limitation on damages or remedies.  ECF

7  No. 39 at 3, ¶ 3.

8      On March 30, 2012, AJ Ochoa orally approved IVI's "Final Bid" that

9  contained a written three-year warranty with no limitation on damages or remedies.

10  ECF No. 39 at 3, ¶ 3.

11      On April 6, 2012, AJ Ochoa signed the written contract with a "form

12  signature page" for one vegetable storage facility on behalf of AJ Ochoa

13  Corporation, which included the following relevant terms:

14      10. GOVERNING LAW: This agreement shall be governed by and
construed in accordance with the laws of Idaho.

15      11. LIMITED WARRANTY: Industrial Ventilation, Inc. warrants
ventilation systems and parts, when not misused or neglected, to be

16  free from defects in workmanship or materials for one year after
installation for the original purchaser.  The company's obligation

17  under this warranty is limited to repairing or replacing during the
warranty period any defective part.  Customer's sole remedy for

18  defective workmanship or materials shall be repair or replacement of
the part, respectively.

19      12. DISCLAIMER: THIS WARRANTY SHALL BE IN LIEU OF
ANY OTHER WARRANTY, EXPRESS OR IMPLIED,

20  INCLUDING ANY IMPLIED WARRANTY OR FITNESS FOR
PARTICULAR PURPOSE.  INDUSTRIAL VENTILATION, INC.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 4

1

2    EXPRESSLY DISCLAIMS ANY LIABILITY FOR ECONOMIC OR
     CONSEQUENTIAL DAMAGES, INCLUDING LOSS OR PROFIT.
     13. It is the responsibility of the user to ensure that the ventilation
3    system is fit for the intended application.  Oral statements of the seller
     do not, constitute warranties shall not be relied upon by the user, and
4    are not part of the contract for sale.
     14: MERGER: This contract represents the entire agreement between
5    the parties.  All prior representations, conversations, or negotiations
     shall be deemed to be merged into this contract.  No changes will
6    valid unless made in writing and signed by an agent of Industrial
     Ventilation, Inc.

7    ECF Nos. 98-2 at 2-3, ¶ 8; 98-3 at 18; 39 at 3, ¶ 3.  Plaintiffs contend AJ Ochoa

8    asked Alan Scott, an IVI employee, about the changed terms, including the one-

9    year warranty, and Scott expressly told AJ Ochoa that the form terms did not

10   apply.  ECF No. 39 at 3, ¶ 3.  Following the agreement, IVI installed the 36,000

11   ton vegetable storage facility in 2012.  ECF No. 98-2 at 3, ¶ 9.

12       In 2015, AJ Ochoa solicited IVI to build a second vegetable storage facility.

13   ECF No. 98-2 at 3, ¶ 10.  On March 31, 2015, AJ Ochoa, on behalf of AJ Ochoa

14   Corporation, signed a written agreement with IVI for a nearly identical vegetable

15   storage facility, which contained the same aforementioned clauses on liability

16   limitations, liability disclaimers, and merger clauses.  ECF Nos. 98-2 at 3, ¶ 11; 98-

17   3 at 23.  IVI installed the second 36,000 ton vegetable storage facility in 2015.

18   ECF No. 98-2 at 3, ¶ 12.  Plaintiffs contend the same three-year warranty without

19   any limitation of liability or damages was orally agreed to for the second storage

20   facility, but not included in the contract.  ECF No. 39 at 3, ¶ 3.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 5

1    Following the construction of the facilities, IVI provided warranty work for

2    three years without additional charge.  ECF No. 39 at 3, ¶ 4.

3    IVI designed, installed, assembled, tested, and commissioned the storages,

4    and the systems and equipment sold to AJ Ochoa Corporation.  ECF No. 39 at 4, ¶

5    6.  IVI agreed to multiple performance parameters and made express warranties for

6    the equipment and systems it sold to AJ Ochoa Corporation, including: (1) that the

7    equipment, sensors, controls, systems, and storages were "state of the art" and

8    designed, intended, and suitable for storage of potatoes and onions, (2) that the

9    equipment and systems would deliver a contractually specified cubic feet per

10   minute volume of airflow (CFM) per ton and as a whole, at a contractually

11   specified static air pressure (1.25 in. w.c.), (3) that the equipment, sensors,

12   controls, and systems would "precisely" monitor and control conditions in each

13   independent storage zone, (4) that the equipment, sensors, controls, and systems

14   could reach and hold temperatures within 0.1 degree of setpoint, (5) that each

15   storage would have four independent storage zones, and (6) that the systems would

16   save substantial electrical costs.  ECF No. 39 at 3-4, ¶ 5.

17   Plaintiffs contend IVI breached its contractual performance specifications

18   and obligations, breached express warranties, breached the standard of care for the

19   selection, design, installation assembly, testing, and start up of the systems,

20   equipment and storages; the equipment, systems, and components manufactured

1   and sold by IVI were defective.  ECF No. 39 at 4, ¶ 7.  Plaintiffs contend that

2   repair or replacement of equipment, components, or parts of the storages or

3   systems sold and installed by IVI will not fix the major problems with the two

4   facilities' systems and equipment.  ECF No. 39 at 5, ¶ 8.

### DISCUSSION

6   **A.  Summary Judgment Standard**

7        The Court may grant summary judgment in favor of a moving party who

8   demonstrates "that there is no genuine dispute as to any material fact and that the

9   movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling

10  on a motion for summary judgment, the court must only consider admissible

11  evidence.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).  The

12  party moving for summary judgment bears the initial burden of showing the

13  absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

14  317, 323 (1986).  The burden then shifts to the non-moving party to identify

15  specific facts showing there is a genuine issue of material fact.  *See Anderson v.*

16  *Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla

17  of evidence in support of the plaintiff's position will be insufficient; there must be

18  evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.

19       For purposes of summary judgment, a fact is "material" if it might affect the

20  outcome of the suit under the governing law.  *Id.* at 248.  Further, a dispute is

"genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## B. Stipulated Dismissal

As an initial matter, Plaintiffs agree to dismiss the breach of fiduciary claim and dismiss Plaintiff A&C Land Company, LLC from this matter. ECF No. 104 at 3. Therefore, Plaintiffs' breach of fiduciary claim and Plaintiff A&C Land Company, LLC are dismissed.

## C. Choice-of-Law Analysis

In a prior Order, the Court determined that Idaho substantive law applies to Plaintiffs' breach of contract claim. ECF No. 31 at 3. As demonstrated *infra*, the parties apply Idaho law to the contract claims per the 2012 and 2015 contracts. *See* ECF No. 98-3 at 18, 22. However, Defendant's motion for summary judgment and Plaintiffs' response both apply Washington law to Plaintiffs' tort claims. ECF No. 98 at 9-17; ECF No. 104 at 14-21. In reply, however, Defendant claims that Idaho law governs, or at least bars, Plaintiffs' tort claims. *Compare* ECF No. 98 at 9-17

1   *with* ECF No. 109 at 14-17.  Additionally, the Court notes Plaintiffs alternatively

2   pled their Consumer Protection Act and Product Liability Act claims under both

3   Washington and Idaho law.  *See* ECF No. 1 at 9, ¶ 42, at 11, ¶ 52.  Therefore, the

4   Court must resolve which state's law will apply to Plaintiffs' tort claims.

5        "Claims arising in tort are not ordinarily controlled by a contractual choice

6   of law provision."  *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d

7   401, 407 (9th Cir. 1992) (citing *Consolidated Data Terminals v. Applied Digital*

8   *Data Systems*, 708 F.2d 385, 390 n.3 (9th Cir. 1983)).  "Rather, they are decided

9   according to the laws of the forum state."  *Id.*  A federal court sitting in diversity

10  applies the forum state's choice-of-law rules – here, Washington.  *Patton v. Cox*,

11  276 F.3d 493, 495 (9th Cir. 2002).

12       Where parties dispute choice of law, there must be an actual conflict

13  between the laws or interests of Washington and the laws or interests of the other

14  state.  *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 180

15  Wash. 2d 954, 967 (2014).  Absent an actual conflict, Washington law

16  presumptively applies.  *Erwin v. Cotter Health Centers*, 161 Wash. 2d 676, 692

17  (2007).  If there is an actual conflict, Washington utilizes the "most significant

18  relationship test."  *FutureSelect*, 180 Wash. 2d at 967.  In determining which state

19  law applies to tort claims, courts will 1) "evaluate the contacts with each interested

20  jurisdiction" under Restatement (Second) of Conflict of Laws § 145 and any

1  section relevant to the causes of action[2] and 2) "evaluate the interests and policies

2  of the potentially concerned jurisdictions" under Restatement § 6.  *Woodward v.*

3  *Taylor*, 184 Wash. 2d 911, 918-19 (2016).

4       Here, the parties' choice of law provisions in the agreements do not govern

5  the tort claims.  *Sutter Home Winery*, 971 F.2d at 407.  The agreements do not

6  reference that Idaho law would govern "the relationship" nor claims "arising out

7  of" or "relating to" the parties' agreements.  *See Magellan Real Est. Inv. Tr. v.*

8  *Losch*, 109 F. Supp. 2d 1144, 1158 (D. Ariz. 2000) (narrowly construing choice of

9  law provision where there were no terms expanding scope to all disputes).  Rather,

10  the contracts states: "This agreement shall be governed by and construed in

11  accordance with the laws [of] Idaho."  ECF No. 98-3 at 18, 22.  The sole term

12  "agreement" supports the Court's conclusion that the contracts solely govern

13  claims sounding in contract.  As to the tort claims, the parties do not engage in a

14  choice of law analysis but generally apply Washington law.  *See* ECF Nos. 98,

15  104.  Thus, neither party identified any actual conflict of law.[3]  In any event, the

16

17  [2]       Here, the Restatement sections relevant to Plaintiffs' tort claims are § 147

18  (injuries to tangible things) and § 148 (fraud and misrepresentation).

19  [3]       The Court identifies one actual conflict relevant to this dispute: Washington

20  recognizes the independent duty doctrine, Idaho does not.

1    Court finds Washington law applies to Plaintiffs' tort claims under the relevant

2    Restatement factors, including that the injury occurred in Washington, the conduct

3    occurred in Washington, Plaintiffs are residences of Washington, and the

4    relationship is centered in Washington.  Therefore, the Court applies Idaho law to

5    Plaintiffs' contract claims and Washington law to Plaintiffs' tort claims.

6        **D.  Applicable Law to Contracts**

7        The parties dispute whether Idaho's common law or Uniform Commercial

8    Code ("UCC") applies to the contracts at issue.  Defendant asserts Idaho's

9    common law applies on the grounds that the contracts, involving both goods and

10    services, were predominantly for "IVI's comprehensive services."  ECF No. 98 at

11    4-5.  Plaintiffs assert Idaho's UCC applies on the grounds that the contracts "deal

12    expressly and exclusively with the sale of identified pieces of equipment at a fixed

13    price – nothing else."  ECF No. 104 at 6.

14        Under Idaho law, the UCC applies to contracts for the sale of goods and

15    Idaho common law applies to contracts for services.  *Fox v. Mountain W. Elec.,*

16    *Inc.*, 137 Idaho 703, 709 (2002).  Under the UCC, "goods" is defined as "all things

17    (including specially manufactured goods) which are movable at the time of

18    identification to the contract for sale …."  Idaho Code § 28-2-105(1).  "Goods

19    must be both existing and identified before any interest in them can pass.  Goods

20

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 11

which are not both existing and identified are 'future' goods." Idaho Code § 28-2-105(2).

"If an agreement contains terms for the sale of goods and services, the contract is a hybrid contract." *Silicon Int'l Ore, LLC v. Monsanto Co.*, 155 Idaho 538, 546 (2013) (citing *Fox*, 137 Idaho at 709). If a hybrid contract is at issue, courts apply the "predominant factor" test, which considers the entire transaction and "whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved (e.g., contract with artist for painting) or is a transaction of sale, with labor incidentally involved (e.g., installation of a water heater in a bathroom)." *Fox*, 137 Idaho at 710 (citing *Pittsley v. Houser*, 125 Idaho 820, 822 (Ct. App. 1994)). The issue of whether a hybrid contract is primarily for goods or services is a question of law. *See Pittsley*, 125 Idaho at 822.

Here, the Court finds the contracts at issue are hybrid contracts where the parties' transactions were primarily for services, with the sale of goods incidentally involved. *Fox*, 137 Idaho at 710. While the contracts primarily focus on listing the equipment necessary for the facilities, the Court looks to the transaction as a whole. *Id.* at 709. In 2012, Plaintiff solicited bids from a few companies to build a large vegetable facility. ECF No. 98-2 at 2, ¶¶ 5-6. Defendant designs, manufactures, constructs, assembles, installs, monitors, services, and repairs

vegetable storage facilities and their control modules.  ECF No. 98-2 at 2, ¶ 7.

According to Plaintiff AJ Ochoa, Plaintiffs chose Defendant for the project in 2012

in part "[b]ased on representations by [Defendant] about its skill and expertise in

potato and onion storage systems."  ECF No. 40 at 2, ¶ 4.  The primary focus for

the facilities appears to be for the specialized design and construction of the

equipment and system that Defendant offered.  As result, under the predominant

factor test, the Court finds that common law applies to the 2012 and 2015 contracts

for the onion and potato storage facilities.

### E.  Contract Formation

The parties dispute what documents constitute the parties' final and binding

contracts.  Defendant asserts the 2012 and 2015 contracts, *see* ECF No. 98-3 at 16-

23, are the final and binding agreements between the parties.  ECF No. 98 at 5.

Plaintiffs assert the "deal was struck" in the 2012 final bid prior to AJ Ochoa

signing the contract (with the 2015 "deal" mirroring the same intent), so that the

final bid constitutes the final agreement of the parties on both the 2012 and 2015

facilities.[4]  ECF No. 104 at 9.

---

[4]       Notably, the 2012 and 2015 agreements that Plaintiff argues are not binding

on the parties are the very same documents Plaintiff relies on to assert that the

1    The formation of a contract requires a meeting of the minds sufficient to

2    manifest mutual intent, where such manifestation is in the form of an offer and

3    acceptance.  *Fed. Nat. Mortg. Ass'n v. Hafer*, 158 Idaho 694, 701-02 (2015).  "A

4    contract must be complete, definite and certain in all its material terms, or contain

5    provisions which are capable in themselves of being reduced to certainty."

6    *Brunobuilt, Inc. v. Strata, Inc.*, 166 Idaho 208, 217 (2020) (internal citation

7    omitted).  Whether a contract is formed is "largely a question of intent."  *Id.*

8    (internal citation omitted).  Merger clauses demonstrate intent because they

9    "establish that the parties have agreed that the contract contains the parties' entire

10   agreement."  *Howard v. Perry*, 141 Idaho 139, 142 (2005).  In considering intent,

11   "the determination of the existence of a sufficient meeting of the minds to form a

12   contract is a question of fact to be determined by the trier of facts."  *Id.* (internal

13   citation omitted).  However, "if the evidence is insufficient, undisputed or

14   conclusive as to the existence or terms of a contract, it should not be submitted to

15   the jury."  *Shields & Co. v. Green*, 100 Idaho 879, 882 (1980).

16   Generally, oral stipulations, agreements, and prior negotiations are presumed

17   to merge into a complete, integrated written contract, and evidence cannot be

18

19   UCC applies.  *Compare* ECF No. 104 at 6 (citing ECF Nos. 35.1-35.3) *with* ECF

20   No. 104 at 9-10.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 14

admitted for the purpose of contradicting the plain terms of the contract. *Lindberg v. Roseth*, 137 Idaho 222, 228 (2002); *Belk v. Martin*, 136 Idaho 652, 657-58 (2001). "Under the parol evidence rule, if the written agreement is complete on its face and unambiguous, no fraud or mistake being alleged, extrinsic evidence of prior contemporaneous negotiations or conversations is not admissible to contradict, vary, alter, add to or detract from the terms of the written contract." *Lindberg*, 137 Idaho at 228. A term is ambiguous "if it is reasonably subject to conflicting interpretation and an ambiguous contract presents a question of fact regarding the parties' intent." *Walker v. Am. Cyanamid Co.*, 130 Idaho 824, 831 (1997). As to allegations of fraud, the rule "does not preclude admission of evidence that one party to a contract made representations that fraudulently induced the other party to enter into the contract." *Lindberg*, 137 Idaho at 228. Fraud "vitiates the specific terms of the agreement and can provide a basis for demonstrating that the parties agreed to something apart from or in addition to the written documents …. [T]he theory is that because of fraud, there was no contract." *Budget Truck Sales, LLC v. Tilley*, 163 Idaho 841, 847 (2018) (internal citation and quotation marks omitted).

Plaintiff contends that "defects in workmanship" and "economic or consequential loss" are ambiguous terms. ECF No. 38 at 15-17. The parties assert that Idaho courts have not interpreted the term "faulty workmanship" and thus, turn

to Ninth Circuit law.  *See* ECF No. 109 at 10.  As to the term "workmanship", the Idaho Supreme Court found the noun has a plain, ordinary meaning: "1) the art or skill of a workman[;] 2) the art or skill with which something is made or executed[;] 3) the degree of art or skill exhibited in the finished product[;] 4) the piece of work so produced."  *Fisher v. Garrison Prop. & Cas. Ins. Co.*, 162 Idaho 149, 154 (2017).  The term "economic loss" includes the "costs of repair and replacement of defective property which is the *subject of the transaction*, as well as commercial loss for inadequate value and consequent loss of profits or use."  *Ramerth v. Hart*, 133 Idaho 194, 196 (1999) (internal citation omitted).  The term "consequential" damages or loss are the "direct consequences of the opposing party's breach and that the losses were within the reasonable contemplation of the parties when they entered into their contract."  *MH & H Implement, Inc. v. Massey-Ferguson, Inc.*, 108 Idaho 879, 882 (Ct. App. 1985) (internal citation omitted).  Under Idaho law, the Court finds the terms unambiguous as used in the contract.  Following the plain, ordinary meaning of "workmanship", the term covers defects both in the process and the finished product.  *Fisher*, 162 Idaho at 154.  The "economic or consequential loss" covers loss for that which is the subject of the transaction and the losses that are within the reasonable contemplation of the parties, i.e. the loss of potatoes and onions are a reasonably foreseeable

1  consequence of a defect in Defendant's design, workmanship and/or materials.

2  *Ramerth*, 133 Idaho at 196; *MH & H Implement*, 108 Idaho at 882.

3       However, viewing the disputed facts in light most favorable to Plaintiffs,

4  Plaintiffs have shown Defendant made intentional and/or negligent

5  misrepresentations that induced them to enter into the contracts.  *See* ECF No. 104

6  at 20 (citing ECF 25 at 2, ¶¶ 3-5; ECF 40 at 2-8, ¶¶ 4, 6-9, 11-12, 14-18; ECF No.

7  104-2 at 2-3, ¶¶ 5-6).  The claim for intentional misrepresentations, or fraud,

8  triggers an exception to the parol evidence rule.  Such claims can use parol

9  evidence to show that there was no contract.  *Budget Truck Sales*, 163 Idaho at

10  847.  Therefore, Plaintiffs may invalidate the contracts by showing AJ Ochoa's

11  signature was procured through fraud and/or misrepresentation.

12       In sum, the 2012 and 2015 written contracts contain merger clauses and are

13  unambiguous as to their terms.  However, Plaintiffs alleged fraud through

14  intentional misrepresentations that allow parol evidence to establish that the

15  contracts are voidable.  As a result, there are material questions of fact as to

16  whether the 2012 and 2015 contracts are binding and enforceable.  Therefore,

17  summary judgment on the applicable warranty period and disclaimers is not

18  appropriate.

19      **F.  Independent Duty Doctrine**

20       Defendant moves for summary judgment on the grounds that four of

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 17

Plaintiffs' tort claims (negligence, products liability, negligent/intentional

misrepresentation, and breach of fiduciary duty) are also barred under

Washington's Independent Duty Doctrine.  ECF No. 98 at 9-17.  Plaintiffs assert

that the doctrine is inapplicable under the facts of this case.  ECF No. 104 at 14-21.

Under Washington's independent duty doctrine, "[a]n injury is remediable in

tort if it traces back to the breach of a tort duty arising independently of the terms

of the contract." *Eastwood v. Horse Harbor Found., Inc.*, 170 Wash. 2d 380, 389

(2010).  Courts apply the doctrine to a "narrow class of cases, primarily limiting its

application to claims arising out of construction on real property and real property

sales." *Elcon Const., Inc. v. E. Washington Univ.*, 174 Wash. 2d 157, 165 (2012).

The Washington Supreme Court directed courts "not to apply the doctrine to tort

remedies 'unless and until this court has, based upon considerations of common

sense, justice, policy and precedent, decided otherwise.'" *Id.* (quoting *Eastwood*,

170 Wash. 2d at 416).  Whether a duty of care is owed and the scope of that duty is

a question of law; breach and causation are questions of fact for the jury.

*Eastwood*, 170 Wash. 2d at 395; *Nichols v. Peterson NW, Inc.*, 197 Wash. App.

491, 505 (2016).

*1.  Negligence*

An engineer has a common law duty of care that "extends to safety risks of

physical damage to the property on which the engineer works" and "to the persons

who hold a legally protected interest in the damaged property." *Affiliated FM. Ins.*
*Co. v. LTK Consulting Servs., Inc.*, 170 Wash. 2d 442, 456 (2010).  To comply
with this duty, engineers must exercise "the degree of care, skill, and learning
expected of a reasonably prudent engineer in the state of Washington acting in the
same or similar circumstances." *Id.* at 455.  In applying *Affiliated FM's* holding,
the Washington Court of Appeals found:

> We hold that an engineer's duty of care encompasses, *inter alia*, the
> prevention of safety risks.  Even where such safety risks do not cause
> consequential damage to persons or property, the risk itself constitutes
> an injury within the class of harm contemplated by a design
> professional's duty of care.  Where an engineer's design services
> ultimately result in the construction of an unsound structure, the
> engineer has breached his duty of care.

*Pointe at Westport Harbor Homeowners' Ass'n v. Engineers Nw., Inc., P.S.*, 193
Wash. App. 695, 704-05 (2016) (internal citations omitted).

Here, in providing design and engineering services, Defendant has a
common law duty to prevent *safety risks* of physical damage to the property on
which the engineer works.  *Affiliated FM.*, 170 Wash. 2d at 456-58 (emphasis
added).  Defendant's engineer observed that one of the facility's "wall was being
pushed out by air pressure" and stated "this doesn't look good."  ECF No. 104-1 at
2-3, ¶ 1.  Defendant does not dispute that the static pressure in the facilities at
times far exceeded the 1.75 dangerous pressure level that can in essence create a
"bomb" that causes catastrophic structural failure.  *Id.*  Defendant's only response

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 19

is that "[e]ven if Plaintiffs could offer some theoretical evidence that the static pressure levels were *actually* dangerous in these particular facilities, there would be no causal connection between that danger and the alleged crop loss because that danger never materialized."  ECF No. 109 at 15.  To the contrary, Defendant has the duty to prevent the risk of creating an unsound structure and to prevent a safety risk of physical damage to the property.  *Pointe*, 193 Wash. App. at 704-05.  Any issues of breach and causation are issues of fact for the jury.  In finding an existing duty sounding in tort, the Court finds that Plaintiffs' negligence claim is not barred by the independent duty doctrine.

### 2. *Product Liability*

The Washington Product Liability Act ("WPLA") is the exclusive remedy for product liability clams.  *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wash. 2d 299, 322-23 (1993).  "[A] product manufacturer has a tort duty to avoid product designs and construction that are unreasonably dangerous."  *Eastwood*, 170 Wash. 2d at 395 (citing RCW 7.72.030).  A "product" is defined as "any object possessing intrinsic value, capable of delivery either as an assembled whole or as a component part or parts, and produced for introduction into trade or commerce."  RCW 7.72.010(3).  A "manufacturer" "includes a product seller who designs, produces, makes, fabricates, constructs, or remanufactures the relevant product or component part of a product before its sale to a user or consumer."

RCW 7.72.010(2). Similar to the claim for negligence, a breach of tort duty will occur if the "product defect results in a personal injury or damage to other property." *Eastwood*, 170 Wash. 2d at 396. If the injury is only to the product itself, "WPLA tort duties are implicated if a hazardous product exposes a person or property to an unreasonable risk of harm such that the safety interests of the WPLA are implicated." *Id.*

For the same reasons Plaintiffs' negligence claims is not barred by the independent duty doctrine, Plaintiffs' WPLA claim is not barred. *See supra* at 22-23. The Court finds that Defendant, to the extent it is classified as a "product manufacturer,"[5] has an independent tort duty to avoid product designs and construction that are unreasonably dangerous. *Eastwood*, 170 Wash. 2d at 395. Therefore, Plaintiffs' WPLA claim is not barred by the independent duty doctrine.

*3. Misrepresentation*

The Washington Supreme Court held that the independent duty doctrine

---

[5]    Defendant does not move for summary judgment on the merits of Plaintiffs' WPLA claim, including whether it is a "product manufacturer." Thus, the Court expresses no view as to the claim's success or legal effect, including preemption of other tort claims. *See* RCW 7.72.010(2)-(4); *Bylsma v. Burger King Corp.*, 176 Wash. 2d 555, 559 (2013).

does not generally bar claims for negligent misrepresentation and fraud.  *Donatelli*

*v. D.R. Strong Consulting Engineers, Inc.*, 179 Wash. 2d 84, 98 (2013); *Eastwood*,

170 Wash. 2d at 388.  There are circumstances where "a negligent

misrepresentation claim may be viable even when only economic damages are at

stake and the parties contracted against potential economic liability."  *Donatelli*,

179 Wash. 2d at 95.  Such circumstances include the duty to avoid

misrepresentations that induce a party to enter into a contract, a duty which arises

independent of the contract.  *Id.*

Here, Plaintiffs asserts that Defendant made misrepresentations that induced

them to enter into the contracts.  *See* ECF No. 104 at 20 (citing ECF 25 at 2, ¶¶ 3-

5; ECF 40 at 2-8, ¶¶ 4, 6-9, 11-12, 14-18; ECF No. 104-2 at 2-3, ¶¶ 5-6).  To the

extent these allegations are made, Defendant has an independent duty to avoid

misrepresentations that induced AJ Ochoa to sign the contracts on behalf of AJ

Ochoa Corporation.  As a result, the Court finds that Plaintiffs' misrepresentation

claim is not barred by the independent duty doctrine.

### G.  Tort Claims Not Briefed

Defendant did not move for summary judgment on Plaintiffs' fraudulent

concealment and Consumer Protection Act ("CPA") claims.  *See* ECF No. 1 at 16;

ECF No. 98.  As to the CPA claim, in its' reply, Defendant merely argues "the

parties specifically designated Idaho law to govern the contracts.  Thus, whether

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 22

1    public policy voids the limited warranty terms as to Plaintiffs' CPA claim is a

2    matter of *Idaho's* public policy, not Washington's.  Plaintiffs cite no Idaho

3    authority."  ECF No. 109 at 14-15.

4          The Court declines to address claims Defendant failed to raise in moving for

5    summary judgment and arguments raised for the first time in the reply brief.

6    *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).  While not briefed by the

7    parties, these claims sound in tort and do not appear to be barred by the

8    independent duty doctrine.  Therefore, summary judgment on these claims is not

9    appropriate.

10         **H.  Standing**

11         Defendant moves for summary judgment on the grounds that AJ Ochoa, Jodi

12   Ochoa and A&C Land Company lack standing.  ECF No. 98 at 2-3.  Plaintiffs

13   assert that Terra Gold, AJ Ochoa Corporation, and the AJ and Jodi Ochoa

14   individually have standing to sue but agree that A&C Land Company may be

15   dismissed.  ECF No. 104 at 21.

16         The Ninth Circuit found "the characterization of an action as derivative or

17   direct is a question of state law."  *Sax v. World Wide Press, Inc.*, 809 F.2d 610, 613

18   (9th Cir. 1987) (internal citation omitted).  Once the characterization is made under

19   state law, the applicable federal law governs the procedural rules.  *Id.* (applying

20   Rule 23.1 to derivative actions).  Under Washington law, shareholders are

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 23

1    generally not allowed to bring an individual direct cause of action for an injury

2    inflicted upon the corporation or its property by a third party.  *Sabey v. Howard*

3    *Johnson & Co.*, 101 Wash. App. 575, 584 (2000).  There are two exceptions: (1)

4    where there is a special duty between the shareholder and third party and (2) where

5    the shareholder suffered an injury separate and distinct from the harm suffered by

6    other shareholders.  *Id.* at 584-85.

7         Here, Plaintiffs are directly suing in their individual capacity, and therefore

8    must demonstrate application of a special duty or separate and distinct harm.  *See*

9    *id.*  Plaintiffs assert the individual Ochoas have standing to bring the

10   misrepresentation and CPA claims.  ECF No. 104 at 21.  As to the CPA claim, AJ

11   Ochoa Corporation, as a party to the contract, claims injury to itself and qualifies

12   as a "person" under the CPA.  RCW 19.86.010(1).  As to the misrepresentation

13   claim, Plaintiffs are seeking economic injury for the claims that led to the contract

14   and construction of the 2012 and 2015 facilities.  The individual Ochoas lack "the

15   type of personal injury sufficient to confer standing for a direct suit and is not the

16   party entitled to the 'fruits of the action.'"  *Goldberg Fam. Inv. Corp. v. Quigg*,

17   184 Wash. App. 1019 (2014).  As a result, Plaintiffs AJ and Jodi Ochoa do not

18   have standing to bring a direct action.  Neither party has briefed whether Terra

19   Gold has any legal interest to have standing to sue.  However, Defendant concedes

20   that "[t]he only two parties to contract with IVI were AJ Ochoa Corporation and

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 24

Terra Gold Farms. ECF No. 98 at 2. Since Terra Gold Farms grows the potatoes and onions, it appears it has suffered the economic loss from spoilation.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment (ECF No. 98) is **GRANTED in part** and **DENIED in part**.

2. Plaintiffs' breach of fiduciary duty claim is **DISMISSED**.

3. Plaintiffs A&C Land Company, and AJ and Jodi Ochoa are **DISMISSED**. The Clerk shall adjust the docket accordingly.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED November 18, 2021.



THOMAS O. RICE
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 25